**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| DICTATEMD, INC. D/B/A CROSBY HEALTH, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ALI AHMADI, | ) ) | Case No.  4:26-cv-1129 |
| and | ) ) | |
| VIJAY ANAND, | ) ) | JURY TRIAL DEMANDED |
| and | ) ) ) | |
| CODEWORKX LLC, | ) ) | |
| Defendants. | ) | |

**COMPLAINT**

COMES NOW Plaintiff DictateMD, Inc. d/b/a Crosby Health ("Plaintiff" or "Crosby Health"), by and through its undersigned counsel, and for its Complaint against Defendants Ali Ahmadi, Vijay Anand, and Codeworkx LLC (collectively, "Defendants"), states as follows:

**INTRODUCTION**

This case is about Defendant Ali Ahmadi's deliberate and unauthorized scheme to exploit his privileged access to Plaintiff Crosby Health's proprietary healthcare software platform (the "Crosby Platform") to copy, replicate, and misappropriate Plaintiff Crosby Health's trade-secret-protected technology for use in a competing product with the assistance of Defendant Codeworkx LLC ("Codeworkx") and its CEO, Defendant Vijay Anand.

Plaintiff's Crosby Platform is designed to enable healthcare organizations to administer the Centers for Medicare & Medicaid Services ("CMS") Guiding and Improved Dementia Experience

("GUIDE") program, a care coordination model supporting individuals living with dementia and their caregivers. The GUIDE program is designed to improve the quality of care and quality of life for individuals living with dementia and to reduce caregiver strain by providing comprehensive, coordinated dementia care services. Such services provided by those healthcare organizations include structured care planning, caregiver education, respite care coordination, and care navigation.  Crosby Health enables those healthcare organizations to succeed within the GUIDE program.

Defendant Ali Ahmadi ("Defendant Ahmadi"), while serving as Chief Executive Officer of Eli Health GUIDE Ops LLC ("Eli Health"), a licensed customer of Crosby Health, exploited his authorized access to the Crosby Platform to systematically review and replicate Crosby Health's proprietary software modules and trade secrets. Defendant Ahmadi further caused unauthorized individuals, including his business partner, Vijay Anand ("Defendant Anand"), to access the Crosby Platform without authorization, providing Defendants with the means to copy and replicate Crosby Health's trade secrets. Defendant Ahmadi took these actions in knowing violation of the software license agreements he personally executed with Crosby Health as CEO of Eli Health, which expressly prohibited unauthorized use, access by unauthorized third parties, and/or reverse engineering of any of Crosby Health's proprietary software.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Crosby Health is a corporation incorporated under the laws of the State of Delaware with its principal place of business located at 12395 Olive Blvd, Ste 100, Saint Louis, Missouri 63141.

2.      Defendant Ahmadi is a citizen of the State of Missouri, residing at 1 Westwood Country Club, Westwood, Missouri 63131.

2

3.     Upon information and belief, Defendant Anand is a citizen of the State of Illinois, residing at 6 River Oaks Cir W, Buffalo Grove, IL 60089.

4.     Codeworkx LLC is an Illinois limited liability company with its principal place of business located at 6 River Oaks Cir W, Buffalo Grove, IL 60089.

5.     This Court has subject matter jurisdiction over Plaintiff Crosby Health's federal claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq., pursuant to 28 U.S.C. § 1331.

6.     This Court has supplemental jurisdiction over Plaintiff Crosby Health's state law claims pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same nucleus of operative facts as Plaintiff Crosby Health's federal claims and form part of the same case or controversy.

7.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District.

### GENERAL ALLEGATIONS COMMON TO ALL COUNTS

8.     Plaintiff Crosby Health realleges and incorporates herein by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

### Plaintiff Crosby Health's Development of Its Proprietary Software

9.     Crosby Health is a health technology company that has developed the Crosby Platform, a comprehensive, proprietary software system designed to enable healthcare organizations to efficiently administer the CMS GUIDE program for patients living with dementia.

10.     Participation in the GUIDE program requires healthcare organizations to administer a complex set of program requirements and reporting obligations.

3

11.     The Crosby Platform supports complex program operations including care coordination, respite care management, revenue cycle management, core program setup and configuration, and related clinical and administrative workflow management.

12.     The Crosby Platform embodies proprietary information developed over the course of eighteen (18) months of development work and substantial monetary investments, including without limitation:

a.  proprietary software modules and related algorithms, data structures, and configurations developed for use within the Crosby Platform;

b.  proprietary workflows and process logic embedded within or associated with the Crosby Platform, including workflows for GUIDE and principal care management, as well as additional wellness related workflows;

c.  confidential technology development strategies, roadmaps, and technical plans relating to the Crosby Platform and its integration with applicable healthcare programs;

d.  proprietary billing, payment processing, and claims management systems and infrastructure developed for use within the Crosby Platform; and

e.  the overall design, architecture, layout, content, and functionality of the Crosby Platform's confidential and proprietary software interface.

13.     The above proprietary, trade-secret-protected information represents Crosby Health's proprietary approach to GUIDE program administration, an approach built through substantial investment of time, expertise, and resources.

14.     The Crosby Platform's software architecture, database schema, data structures, workflows, user interface design, and related technical components, as well as proprietary, trade-

4

secret-protected information of the Crosby Platform discussed above (collectively, the "Trade Secrets") constitute trade secrets under applicable federal and Missouri law.

15.    Crosby Health owns the Crosby Platform and the Trade Secrets.

16.    The Trade Secrets derive independent economic value from not being generally known to or readily ascertainable by others in the industry, particularly competitors seeking to develop GUIDE program administration software without incurring the research, development, and engineering investment required to create their own a platform.

17.    The Crosby Platform was developed specifically to enable GUIDE program participants to manage the GUIDE program's complex set of requirements and reporting obligations efficiently, providing organizations that adopt it with a significant operational and competitive advantage in an emerging and rapidly growing market.

18.    Plaintiff Crosby Health developed key platform components through trial-and-error iteration with real customers and in the context of real CMS billing audits, including the Trade Secrets.

19.    Plaintiff Crosby Health invested no less than $2,000,000 and eighteen (18) months of work in the development of the Crosby Platform to date, including expenditures for hardware costs, developer costs, and software development and license fees.

20.    The Crosby Platform was not built through a linear development process but through eighteen (18) months of iterative development, real-world customer deployment, and continuous refinement informed by actual CMS billing audits, regulatory feedback, and live program operations. This iterative process, as well as the institutional knowledge it produced, cannot be replicated by any shortcut, including the use of modern software development tools, because the value embedded in the Crosby Platform reflects not merely lines of code but eighteen

(18) months of accumulated regulatory insight, operational trial-and-error, and customer-driven improvement that can only be obtained through time, experience, and intellectual analysis and input.

21.     Crosby Health's actual development investment substantially exceeds the above figure, as the Crosby Platform was developed through substantial trial-and-error iteration with real customers and in the context of live CMS billing audits, the costs of which are not fully captured in direct expenditure figures alone.

**Plaintiff Crosby Health's Affirmative and Ongoing Steps to Maintain and Protect Secrecy**

22.     The Trade Secrets are not known outside of Crosby Health, except to a small, specifically authorized set of GUIDE customers and their approved partners, all of whom are bound by written confidentiality agreements.

23.     Crosby Health has taken extensive measures to maintain and protect the secrecy of its Trade Secrets.

24.     For example, Crosby Heath has implemented access controls and user credentialing systems to limit Crosby Platform access to authorized users, including exclusive use of password protected networks.

25.     Each Crosby Platform user has unique login credentials used to access the Crosby Platform.

26.     In order to receive unique login credentials, all users of the Crosby Platform must agree to Crosby Health's Terms & Conditions.  A true and accurate copy of Crosby Health's Terms & Conditions is attached hereto as Exhibit 6. Crosby Health's Terms & Conditions require that the user "acknowledge and agree" that Crosby Health owns "all intellectual property rights of any kind related to the Services, including applicable copyrights, trademarks and other proprietary rights."

Exhibit 6 at p. 4. Further, all users must agree that these proprietary rights are protected by trade secrets. Exhibit 6 at p. 4. Additionally, all users of the Crosby Platform must agree to "not modify, copy, distribute, transmit, display, perform or create derivative works from the content, information or material on the" Crosby Platform. Exhibit 6 at p. 4.

27.     Crosby Health has deployed key-logging and screen-capture monitoring technology to detect, deter, and document any unauthorized access to the Crosby Platform.

28.     Crosby Heath maintains secure facilities by locking the facilities outside of business hours and protecting the facilities with an alarm.

29.     Crosby Heath's employee policies and practices include requirements for maintaining and protecting proprietary and confidential information.

30.     As a condition of employment, every Crosby Health employee and independent contractor is required to sign a written confidentiality agreement that prohibits unauthorized use or disclosure of the Trade Secrets and other non-public information related to the Crosby Platform. A true and accurate copy of Crosby Health's standard foreign employment/contractor contract is attached hereto as Exhibit 3, and a true and accurate copy of Crosby Health's standard domestic employment/contractor contract is attached hereto as Exhibit 5.

31.     For example, Section 6 of Crosby Health's standard foreign employment/contractor contract defines trade secrets as confidential information and requires the employee or contractor to "not use or disclose any Confidential Information at any time" except as authorized by Crosby Heath or as required to fulfil their employment obligations. Exhibit 3 at § 6.

32.     As a further example, Section 2 of Crosby Health's standard domestic employment/contractor contract defines trade secrets as Proprietary Information and Section 3

7

requires that the employee/contractor agree to "not disclose Proprietary Information to anyone outside" of Crosby Health. Exhibit 5 at §§ 2, 3.

33.     Crosby Heath requires all customers to execute agreements containing express confidentiality obligations, restrictions on permitted use, and prohibitions on reverse engineering, copying, decompiling, disassembling, or otherwise replicating the Crosby Platform or any of its components.

34.     Specifically, all of Crosby's software customers have signed a similar set of agreements, including a Billing Services Agreement ("BSA") and a Dementia Care Support Services Agreement ("DCSSA"), as a condition of obtaining access to the Crosby Platform. A true and accurate copy of the DCSSA is attached hereto as Exhibit 1, and a true and accurate copy of the BSA is attached hereto as Exhibit 2.

35.      The BSA and DCSSA include confidentiality clauses restricting use and disclosure of the Trade Secrets and other non-public information.

36.     For example, Section 6 of the DCSSA provides, in relevant part: "The Receiving Party shall: (x) protect and safeguard the confidentiality of the Disclosing Party's Confidential Information with at least the same degree of care as the Receiving Party would use to protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care; (y) not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than to exercise its rights or perform its obligations under this Agreement; and (z) not disclose any such Confidential Information to any person or entity, except to employees, personnel, and contractors who need to know the Confidential Information to assist the Receiving Party, or act on its behalf, to exercise its rights or perform its obligations under this Agreement." Exhibit 1 at § 6.

37.     Section 1.3 of the BSA signed by Crosby Health's customers prohibits reverse engineering of Crosby's Platform, stating, "Participant agrees to not … decompile, disassemble, reverse engineer or otherwise attempt to derive any of the source code or other non-public features, elements or data of the Services." Exhibit 2 at § 1.3.

38.     Plaintiff Crosby Health has not made any public disclosures about the Trade Secrets.

39.     Plaintiff Crosby Health restricts each authorized user's access to the Crosby Platform to the minimum privileges necessary to perform that user's role or function, and does not provide broader access to features, data, or environments beyond that scope.

40.     Plaintiff Crosby Health does not grant access to the Crosby Platform to other parties, including its own partners and investors. For example, no investor receives access to the Crosby Platform or the Trade Secrets unless the investor is also part of an approved customer organization that has executed the required confidentiality agreement and is granted access in that organizational capacity.

41.     All source code and technical materials related to the Crosby Platform are maintained in private, access-controlled repositories. Only personnel who are expressly authorized and have a need for access in connection with their responsibilities are permitted to access these repositories.

42.     Eli Health is a healthcare company that participates in the CMS GUIDE program and has been a customer of Crosby Health since August 2025.  Eli Health executed agreements, including the BSA and DCSSA, among others, with Crosby Health to obtain the right to use the Crosby Platform in connection with Eli Health's GUIDE program operations.  *See* Exhibits 1, 2.

**Defendants' Scheme and Misappropriation of Plaintiff's Trade Secrets**

43.     Defendant Ahmadi is the former CEO of Eli Health.

44.     Acting in his capacity as CEO of Eli Health, Defendant Ahmadi personally executed the BSA and DCSSA agreements on Eli Health's behalf.

45.     The BSA and DCSSA agreements expressly restricted Eli Health's permitted use of the Crosby Platform to authorized purposes within the scope of the agreements, and expressly prohibited Eli Health and its authorized representatives from taking actions to, among other things: "(a) modify, create derivative works from, distribute, publicly display or perform, or sublicense the Services; (b) decompile, disassemble, reverse engineer or otherwise attempt to derive any of the source code or other non-public features, elements or data of the Services; (c) probe, test, tamper with, defeat, disable or circumvent any encryption, pass codes, or other protective mechanism related to the Services; (d) perform benchmark tests on or with the Services; (e) use, evaluate, assess or view the Services for the purpose of designing, modifying, or otherwise creating any environment, software, models, algorithms, products, program, or infrastructure or any portion thereof, which performs functions similar to the functions performed by the Services; (f) use the Services in excess of the rights granted herein; (g) use any Confidential Information of Crosby to dispute or contest Crosby's Intellectual Property Rights in the Services; or (h) enable, encourage or allow anyone to do any of the forgoing." Exhibit 2 at § 1.3.

46.     As the individual who personally executed the BDA and DCSSA, Defendant Ahmadi undeniably had direct, actual, and unambiguous knowledge of each of the restrictions and obligations in the BSA and DCSSA, including those identified in the paragraph above, at all times relevant to this Complaint.

10

47.     As CEO of Eli Health, Defendant Ahmadi had independent access to the Crosby Platform through his own unique login credentials.

48.     On information and belief, beginning in or around June 2026, Defendant Ahmadi devised and executed a deliberate scheme to misappropriate Crosby Health's Trade Secrets for the purpose of developing a competing GUIDE program administration software product without incurring the substantial research, development, and engineering costs that Crosby Health invested in building the Crosby Platform.

49.     On information and belief, Defendant Ahmadi illicitly hired a software development agency, Defendant Codeworkx LLC, to assist in building the competing product that replicated the functionality of the Crosby Platform, using Crosby Health's own Trade Secrets as the technical blueprint, thereby obtaining for free what would otherwise cost substantial time and money to develop.

50.     Upon information and belief, the CEO of Defendant Codeworkx LLC is Defendant Anand.

51.     Upon information and belief, Defendant Anand and Defendant Ahmadi co-founded TCARE, Inc., a Delaware corporation, together and have a previous business relationship.

52.     On or about June 13, 2026, Defendant Ahmadi, misusing his access granted to him through the BSA with Crosby Health, added Defendant Anand to the Crosby Platform without authorization, and Defendant Anand used his access to view non-public modules and workflows of Crosby's Platform.

53.     While CEO of Eli Health, Defendant Ahmadi assigned Defendant Anand his own unique login credentials. At no time was Defendant Anand an employee, officer, director, or otherwise authorized representative of Eli Health.

11

54.     Following his unauthorized addition to the Crosby Platform by Defendant Ahmadi, Defendant Anand, on behalf of Codeworkx, accessed multiple trade-secret-protected modules and workflows of the Crosby Platform. Crosby Health possesses direct screen-capture and key-logger evidence documenting Defendant Anand's access to and review of these proprietary and secret Crosby Platform modules and workflows.

55.     After gaining access to the Crosby Platform, Defendant Anand added additional individuals, believed to be employees or contractors of Codeworkx, to the Crosby Platform as users. These additional individuals likewise attempted to access Crosby Health's Trade Secrets, but Crosby Health was able to block their access before the attempts.

56.     Soon thereafter, in June 2026, Defendant Ahmadi had a working prototype of a competing software product.

57.     On information and belief, Defendant Anand was working on behalf of Defendant Codeworkx.

58.     At no time did Crosby Health authorize Defendant Codeworkx or Defendant Anand to access the Crosby Platform.

59.     At no time did the BSA or DCSSA agreements authorize Defendant Anand or Defendant Codeworkx's access to the Crosby Platform.

60.     Defendant Ahmadi's addition of Defendant Anand to the Crosby Platform was made without Crosby Health's knowledge or consent and in direct violation of the BSA and DCSSA.

61.     Defendant Codeworkx's access through Defendant Anand was made without Crosby Health's knowledge or consent and in direct violation of the BSA and DCSSA.

62.    As soon as Crosby Health discovered Defendants' unauthorized access of the Crosby Platform, Plaintiff sent a letter to Defendant Ahmadi on June 17, 2026, demanding that Defendant Ahmadi: (i) cease all unauthorized use of the Crosby Platform; (ii) confirm in writing that Defendant Anand and his development team's access had been revoked; (iii) return all copies of the Crosby Platform that contain the Trade Secrets; (iv) cease efforts to divert Crosby customers; (v) execute a covenant not to compete; (vi) provide a written accounting of revenue; and (vii) compensate Crosby for damages. A true and accurate copy of the June 17, 2026 demand letter to Defendant Ahmadi is attached hereto as Exhibit 4.

63.    The Crosby Platform modules accessed by Defendant Anand and Defendant Codeworkx's personnel contain Crosby Health's most valuable proprietary and trade-secret-protected information, including the modules, data structures, workflows, and configurations underlying the Trade Secrets, the foundational components necessary to understand and replicate the Crosby Platform's functionality.

64.    Defendant Ahmadi represented to other employees/contractors of Eli Health and/or related companies that he reverse engineered the Crosby Platform by misusing his access thereto to copy it, thereby saving essentially all of the development costs.

65.    Defendant Ahmadi stated to the other Eli Heath employees/contractors that he intended to cut out Crosby Health from its customer, Eli Health.

66.    Defendant Ahmadi further stated to at least some of the other Eli Health employees/contractors that he intended to directly compete with Crosby Health using software developed with the benefit of improper access to Crosby Heath's Trade Secrets.

67.    Defendants Ahmadi and Anand discussed reverse engineering the Crosby Platform in the presence of at least one of the other Eli Heath employees/contractors.

13

68.     Defendant Anand stated in the presence of at least one of the other Eli Heath employees/contractors that he could assist in the reverse engineering process.

69.     Defendants Anand and Codeworkx were not a party to, or beneficiary of, the BSA or DCSSA and acted as strangers to those agreements, pursuing their own economic interests in developing a competing product.

70.     Crosby Heath's over $2,000,000 development costs represent the minimum measure of the economic benefit Defendants obtained through their misappropriation of Crosby Health's Trade Secrets—specifically, the research, development, and engineering investment that Defendants sought to avoid by misappropriating the Trade Secrets rather than developing a competing GUIDE program administration platform independently.

71.     In addition, by misappropriating Crosby Health's Trade Secrets, Defendants obtained an immediate and complete head start into the GUIDE program administration software market (which was pioneered by Crosby Heath), bypassing the intensive and expensive eighteen-month development and refinement period entirely.

72.     In a nascent and rapidly growing market in which CMS is actively expanding the GUIDE program and competitive positions are still being established, the value of the head start gained from Defendants' misappropriation—e.g., the ability to compete immediately rather than after eighteen months of independent development—constitutes a distinct and independent measure of damages suffered by Crosby Health, separate from and in addition to Defendants' avoided development costs, as evidenced by the short amount of time it took to develop the competing prototype.

14

## COUNT I – THEFT OF TRADE SECRET UNDER FEDERAL LAW

73.     Plaintiff Crosby Health incorporates the factual allegations of paragraphs 1 through 72 as if fully set forth herein.

74.     Crosby Health's Trade Secrets constitute trade secrets within the meaning of 18 U.S.C. § 1839(3).

75.     Crosby Health's Trade Secrets derive independent economic value from not being generally known to or readily ascertainable by others in the industry, particularly competitors seeking to develop GUIDE program administration software without incurring the research, development, and engineering investment required to create such a platform legitimately.

76.     Crosby Health has taken extensive measures to maintain their secrecy, including through contractual restrictions, access controls, and system monitoring.

77.     The Crosby Platform is a product and service "used in, or intended for use in, interstate or foreign commerce" within the meaning of 18 U.S.C. § 1836(b)(1). Crosby Health is a Delaware corporation that licenses the Crosby Platform to customers located in multiple states in connection with the national CMS GUIDE program.

78.     Defendant Ahmadi misappropriated Crosby Health's Trade Secrets within the meaning of 18 U.S.C. § 1839(5) by using the Crosby Platform and Trade Secrets without Crosby Health's express or implied consent, through improper means, including causing unauthorized individuals to access the Crosby Platform and its Trade Secrets, and using his limited, licensed access to the Crosby Platform for the unauthorized acquisition, use, and disclosure of Crosby Health's Trade Secrets for competitive purposes, in breach of his duty to maintain their secrecy.

79.     Defendant Ahmadi had direct knowledge that the Trade Secrets were acquired by improper means because he personally signed the BSA and DCSSA agreements on behalf of Eli

15

Health that restricted access to the Crosby Platform and engaged with Defendant Anand and Defendant Codeworkx, which were not authorized users.

80. Defendant Anand misappropriated Crosby Health's Trade Secrets within the meaning of 18 U.S.C. § 1839(5) by acquiring, accessing, and using them through improper means and without Crosby Health's consent. Defendant Anand knew or should have known that his access was unauthorized.

81. Upon information and belief, Defendant Codeworkx, acting by and through its CEO Defendant Anand and other Codeworkx employees and/or contractors, misappropriated Crosby Health's Trade Secrets within the meaning of 18 U.S.C. § 1839(5) by acquiring, accessing, and using Crosby Health's Trade Secrets through improper means, including unauthorized access to the Crosby Platform and the Trade Secrets therein.

82. Specifically, after being added to the Crosby Platform as a user on or about June 13, 2026, despite not being an employee, officer, director, or otherwise authorized representative of Eli Health and despite the BSA's and DCSSA's express restrictions on unauthorized access and reverse engineering, Defendant Anand accessed and reviewed multiple trade-secret-protected modules and workflows of the Crosby Platform, as well as the content, layout, and format of the Crosby Platform's confidential software interface, and thereby obtained the Trade Secrets.

83. Defendant Anand further expanded the unauthorized access by adding additional Codeworkx personnel as users, who likewise improperly accessed Crosby Health's trade-secret-protected modules and designs.

84. Defendant Anand's acquisition and use of Crosby Health's Trade Secrets was undertaken for competitive purposes, including to serve as a technical blueprint to develop a

competing GUIDE program administration platform while avoiding the time, effort, and expense required to develop such a platform independently, causing Crosby Health harm.

85. Defendant Codeworkx knew or had reason to know that the Trade Secrets were acquired by improper means and without authorization because Codeworkx and its personnel were not employees, officers, or authorized representatives of Eli Health, Crosby Health never approved Codeworkx access, and the Crosby Platform's restricted-access controls and confidentiality restrictions made clear the information was proprietary and limited to authorized users.

86. Defendant Anand knew or had reason to know that the Trade Secrets were acquired by improper means and without authorization because he is not an employee, officer, or authorized representatives of Eli Health, Crosby Health never approved his access, and the Crosby Platform's restricted-access controls and confidentiality restrictions made clear the information was proprietary and limited to authorized users.

87. Defendants' misappropriation was willful and malicious within the meaning of 18 U.S.C. § 1836(b)(3)(C).

88. Defendants deliberately orchestrated a scheme to misappropriate Crosby Health's Trade Secrets despite full, personal knowledge, by virtue of Defendant's signature on the BSA and DCSSA, of the Agreement's express restriction not to "decompile, disassemble, reverse engineer or otherwise attempt to derive any of the source code or other non-public features, elements or data of the Services." Exhibit 2 at § 1.3(b).

89. Defendants have wrongfully taken the Trade Secrets to create a competing product without incurring the research, development, and engineering investment required to create such a platform legitimately.

17

90.     As a direct and proximate result of Defendants' misappropriation, Crosby Health has suffered and will continue to suffer damages.

91.     Crosby Health has suffered damages under 18 U.S.C. § 1836(b)(3)(B), as Defendants have been unjustly enriched by its misappropriation of Crosby Health's Trade Secrets, including by avoiding the time, effort, and expense required to develop its own platform.

92.     Crosby Health is entitled to exemplary damages in an amount not more than two times the compensatory damages award pursuant to 18 U.S.C. § 1836(b)(3)(C), because the misappropriation was willful and malicious.

93.     Crosby Health is entitled to its reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

94.     Unless enjoined by this Court, Defendants' continued and threatened misappropriation of Crosby Health's Trade Secrets will cause Crosby Health immediate and irreparable harm for which there is no adequate remedy at law, including the continued exploitation of its proprietary technology by Defendants and others acting in concert with them and the disclosure of its Trade Secrets to additional third parties. Crosby Health is entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A).

## COUNT II – THEFT OF TRADE SECRET UNDER MISSOURI LAW

95.     Plaintiff Crosby Health incorporates the factual allegations of paragraphs 1 through 94 as if fully set forth herein.

96.     Plaintiff Crosby Health is entitled to trade secret protection under Mo. Rev. Stat. § 417.453 *et seq.*

97.     The Trade Secrets derive independent economic value from not being generally known to or readily ascertainable by others in the industry, particularly competitors seeking to

18

develop GUIDE program administration software without incurring the research, development, and engineering investment required to create such a platform legitimately.

98.     Crosby Health has taken reasonable measures to maintain their secrecy, including through contractual restrictions, access controls, and system monitoring.

99.     Defendant Ahmadi misappropriated Crosby Health's Trade Secrets by using the Trade Secrets without Crosby Health's express or implied consent, through improper means, including causing unauthorized individuals to access the Crosby Platform and its Trade Secrets, and using his limited, licensed access to the Crosby Platform for the unauthorized acquisition, use, and disclosure of Crosby Health's Trade Secrets for competitive purposes, in breach of his duty to maintain their secrecy.

100.     Defendant Ahmadi had direct knowledge that the Trade Secrets were acquired by improper means because he personally signed the BSA and DCSSA agreements on behalf of Eli Health that restricted access to the Crosby Platform and engaged with Defendant Anand and Defendant Codeworkx, which were not authorized users.

101.     Defendant Anand misappropriated Crosby Health's Trade Secrets by acquiring, accessing, and using the Trade Secrets through improper means and without Crosby Health's consent. Defendant Anand knew or should have known that his access was unauthorized.

102.     Upon information and belief, Defendant Codeworkx, acting by and through its CEO Defendant Anand and other Codeworkx employees and/or contractors, misappropriated Crosby Health's Trade Secrets by acquiring, accessing, and using Crosby Health's Trade Secrets through improper means, including unauthorized access to the Crosby Platform and its trade-secret-protected modules and designs.

19

103. Specifically, after being added to the Crosby Platform as a user on or about June 13, 2026, despite not being an employee, officer, director, or otherwise authorized representative of Eli Health and despite the BSA's and DCSSA's express restrictions on unauthorized access and reverse engineering, Defendant Anand accessed and reviewed multiple trade-secret-protected modules and workflows of the Crosby Platform, as well as the content, layout, and format of the Crosby Platform's confidential software interface, and thereby obtained the Trade Secrets.

104. Defendant Anand further expanded Defendants' unauthorized access of the Crosby Platform, and to the Trade Secrets, by adding additional Codeworkx personnel as users, who likewise accessed Crosby Health's trade-secret-protected modules and workflows. Defendant Anand's acquisition and use of Crosby Health's Trade Secrets was undertaken for competitive purposes, including to serve as a technical blueprint to develop a competing GUIDE program administration platform while avoiding the time, effort, and expense required to develop such a platform independently, causing Crosby Health harm.

105. Defendant Codeworkx knew or had reason to know that the Trade Secrets were acquired by improper means and without authorization because Codeworkx and its personnel were not employees, officers, or authorized representatives of Eli Health, Crosby Health never approved Codeworkx access, and the Crosby Platform's restricted-access controls and confidentiality restrictions made clear the information was proprietary and limited to authorized users.

106. Defendant Anand knew or had reason to know that the Trade Secrets were acquired by improper means and without authorization because he is not an employee, officer, or authorized representatives of Eli Health, Crosby Health never approved his access, and the Crosby Platform's restricted-access controls and confidentiality restrictions made clear the information was proprietary and limited to authorized users.

20

107.     Defendants Ahmadi, Anand, and Codeworkx had direct knowledge, or reason to know, that the Trade Secrets were acquired and used through improper means as: (i) Defendant Ahmadi personally signed the BSA and DCSSA agreements expressly restricting access to and use of the Crosby Platform; and (ii) Defendants Anand and Codeworkx accessed and used the Crosby Platform and its trade-secret-protected modules and workflows without any authorization from Crosby Health.

108.     Defendants' misappropriation was willful and malicious within the meaning of Mo. Rev. Stat. § 417.457.

109.     Defendants Ahmadi, Anand, and Codeworkx deliberately orchestrated a scheme to misappropriate Crosby Health's Trade Secrets despite full, personal knowledge of the BSA's express restriction not to "decompile, disassemble, reverse engineer or otherwise attempt to derive any of the source code or other non-public features, elements or data of the Services" by virtue of Defendant Ahmadi's signature on the BSA. Exhibit 2 at § 1.3(b).

110.     Defendants Ahmadi, Anand, and Codeworkx have wrongfully taken the Trade Secrets to create a competing product without incurring the research, development, and engineering investment required to create such a platform legitimately.

111.     As a direct and proximate result of Defendants Ahmadi, Anand, and Codeworkx' misappropriation, Crosby Health has suffered and will continue to suffer damages.

112.     Crosby Health has suffered damages under Mo. Rev. Stat. § 417.457, as Defendants have been unjustly enriched by their misappropriation of Crosby Health's Trade Secrets, including by avoiding the time, effort, and expense required to develop its own platform.

113.    Crosby Health is entitled to punitive damages in an amount not exceeding twice the compensatory damages award pursuant to Mo. Rev. Stat. § 417.457, because Defendants acted outrageously with evil motive.

114.    Pursuant to Mo. Rev. Stat. § 417.455, Crosby Health is entitled to injunctive relief to prevent Defendants' actual and threatened continued misappropriation of Crosby Health's Trade Secrets.

## COUNT III – TORTIOUS INTERFERENCE WITH CONTRACT

115.    Plaintiff Crosby Health incorporates the factual allegations of paragraphs 1 through 114 as if fully set forth herein.

116.    As a customer of Crosby Health, Eli Health executed the BSA and DCSSA with Crosby Health to obtain the right to use the Crosby Platform in connection with Eli Health's GUIDE program operations.

117.    Defendant Ahmadi, acting in his capacity as CEO of Eli Health, personally executed the BSA and DCSSA on Eli Health's behalf and, at all relevant times, had direct and actual knowledge of the BSA's and DCSSA's confidentiality, scope-of-use, and anti-reverse-engineering restrictions, including prohibitions against allowing unauthorized third-party access and against copying, reproducing, reverse engineering, decompiling, or otherwise attempting to derive the Crosby Platform's source code, algorithms, or underlying structure.

118.    On information and belief, Defendant Anand is and was, at all relevant times, a close business partner and collaborator of Defendant Ahmadi, and therefore knew or should have known of the existence of Crosby Health's BSA and DCSSA with Eli Health and the associated confidentiality, scope-of-use, anti-reverse-engineering, and third-party access restrictions.

22

119.    Upon information and belief, Codeworkx knew or should have known of the existence of the BSA and DCSSA and their material restrictions, including prohibitions on unauthorized third-party access and use of Crosby Health's confidential information, because Codeworkx's CEO Defendant Anand obtained access through Eli Health's account at Ahmadi's direction and in connection with Codeworkx's development work.

120.    Defendants Ahmadi and Anand, in their personal capacity, intentionally and improperly interfered with the BSA and DCSSA by inducing, encouraging, assisting, and directing Eli Health to breach the agreements and their restrictions, including by causing or permitting unauthorized third-party access to the Crosby Platform, copying or extracting non-public technical information, reverse engineering or attempting to derive elements of the Crosby Platform, and disclosing Crosby Health's confidential information and Trade Secrets to third parties for purposes outside the scope authorized by the BSA and DCSSA.

121.    Codeworkx intentionally and improperly interfered with the BSA and DCSSA by accepting and using unauthorized access to the Crosby Platform, directing or causing additional Codeworkx personnel to be added as users, and using the resulting access to obtain non-public technical information for purposes outside the scope permitted by the BSA and DCSSA.

122.    Defendant Ahmadi personally participated in, approved, or directed acts that exceeded the BSA's and DCSSA's scope-of-use by granting or facilitating access to individuals and entities not expressly authorized, and by encouraging or permitting the copying, reproduction, or analysis of the Crosby Platform and related confidential materials in a manner prohibited by the BSA and DCSSA.

123.    Defendant Anand acted in concert with, aided and abetted, and provided substantial assistance to Defendant Ahmadi in carrying out the foregoing interference with the BSA and

23

DCSSA, including coordinating or directing unauthorized third-party access, facilitating the extraction or analysis of non-public technical information from the Crosby Platform, and assisting efforts to reverse engineer or replicate Crosby Platform functionalities and architecture in violation of the BSA and DCSSA.

124. Defendants Ahmadi, Anand, and Codeworkx's interference was intentional and improper, undertaken with knowledge of the BSA and DCSSA and their material restrictions, without privilege or justification, and with the purpose and effect of causing Eli Health to breach or disrupt performance under the agreements.

125. As a direct and proximate result of Defendants Ahmadi, Anand, and Codeworkx's intentional interference, Eli Health breached the BSA and DCSSA, and/or its performance under the BSA and DCSSA was disrupted. The breach and/or performance disruption was accomplished through unauthorized access to the Crosby Platform, unauthorized copying or use of Crosby Health's confidential information and Trade Secrets, reverse engineering or attempted derivation of protected elements, and/or disclosure to unauthorized third parties.

126. Defendant Ahmadi's intentional interference caused actual and consequential harm to Crosby Health by, among other things, compromising Crosby Health's contractual rights and exclusivity, impairing Crosby Health's ability to maintain the integrity and value of its BSA and DCSSA and confidentiality restrictions, disrupting and undermining Crosby Health's relationships with its GUIDE customers and their partners, and facilitating or attempting to facilitate the development of a competing platform using Crosby Health's Trade Secrets and non-public technical information.

127. At all relevant times, Anand and the other individuals who accessed the Crosby Platform did so as agents of Codeworkx and within the course and scope of their employment and/or engagement. Codeworkx is therefore liable for their acts and omissions.

128. No justification exists for Defendants' interference with the BSA and DCSSA.

129. As a direct and proximate result of Defendants Ahmadi, Anand, and Codeworkx's conduct, Crosby Health suffered damages, including lost business opportunities, loss of exclusivity and competitive advantage in the GUIDE market, impairment of customer and partner relationships, diminution in the value of its confidential information and Trade Secrets, and investigative and mitigation costs incurred to detect, document, and respond to the unauthorized access and misuse.

## COUNT IV– UNJUST ENRICHMENT

130. Plaintiff Crosby Health incorporates the factual allegations of paragraphs 1 through 129 as if fully set forth herein.

131. Defendants Ahmadi and Anand illegally extracted a benefit from Plaintiff Crosby Health in the form of Plaintiff Crosby Health's Trade Secrets and their access to the Crosby Platform, access that was unauthorized, thereby allowing them to avoid expending time and money on their own research and development.

132. Defendants Ahmadi and Anand recognized this benefit, including by using Plaintiff Crosby Health's Trade Secrets and the Crosby Platform to build their own competing product.

133. Defendants Ahmadi and Anand misappropriated and retained this benefit under inequitable and unjust circumstances by misappropriating Plaintiff Crosby Health's Trade Secrets and by accessing and using the Crosby Platform without authorization, including without Plaintiff

Crosby Health's permission or consent, in violation of the BSA and the DCSSA, without valid credentials or rights, all without compensating Plaintiff Crosby Health.

134.   Defendants' retention of this benefit without payment to Plaintiff Crosby Health would be unjust.

### COUNT V – CIVIL CONSPIRACY TO MISAPPROPRIATE PLAINTIFF CROSBY HEALTH'S TRADE SECRETS

135.   Plaintiff Crosby Health incorporates the factual allegations of paragraphs 1 through 134 as if fully set forth herein.

136.   Defendants Ahmadi, Anand, and Codeworkx knowingly agreed to engage in unlawful conduct, with the purpose and effect of misappropriating Plaintiff Crosby Health's Trade Secrets and accessing and using the Crosby Platform without authorization or compensation to Plaintiff Crosby Health.

137.   The agreement and meeting of the minds among Defendants Ahmadi, Anand, and Codeworkx is evidenced by, among other things: (i) discussions involving reverse engineering Crosby's Platform, witnessed by a third-party; (ii) coordinated actions to obtain, share, and exploit Plaintiff Crosby Health's Trade Secrets; and (iii) coordinated access to and use of the Crosby Platform, without authorization, for their own purposes, including to avoid expending their own time and money on research and development.

138.   In furtherance of and pursuant to their agreement, Defendants Ahmadi, Anand, and Codeworkx committed overt acts, including (i) accessing and using Plaintiff Crosby Health's Trade Secrets and the Crosby Platform without authorization; (ii) sharing, copying, and deploying Plaintiff Crosby Health's Trade Secrets for their own benefit; and (iii) leveraging such Trade Secrets and the Crosby Platform to avoid research and development expenditures that they otherwise would have incurred.

26

139.   Ahmadi, Anand, and Codeworkx acted with knowledge that their conduct was unauthorized and unlawful. Ahmadi executed the BSA and DCSSA with Plaintiff Crosby Health and had firsthand knowledge of the applicable use restrictions. Anand, meanwhile, performed work without being a Crosby Health client and without authorized credentials or other permission to access the Crosby Platform. Codeworkx, acting through Anand and its other personnel, likewise accessed and used the Crosby Platform and Plaintiff Crosby Health's Trade Secrets with knowledge that such access was unauthorized and in violation of the BSA and DCSSA.

140.   As a direct and proximate result of the conspiracy and the overt acts committed in furtherance thereof, Plaintiff Crosby Health has suffered and continues to suffer damages in an amount to be proven at trial.

141.   Defendants' actions were undertaken with evil motive and/or with reckless indifference to Plaintiff Crosby Health's rights, entitling Plaintiff Crosby Health to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff DictateMD, Inc. d/b/a Crosby Health respectfully requests that this Court enter judgment in its favor and against Defendants Ahmadi, Anand, and Codeworkx, and grant the following relief:

A.   A preliminary injunction, and upon final judgment a permanent injunction, enjoining Defendant Ahmadi and all persons acting in active concert or participation with him, including without limitation Defendant Anand, Codeworkx LLC, and their respective employees, agents, contractors, and successors in interest, from accessing, using, copying, disclosing, transmitting, distributing, publishing, or otherwise misappropriating any of Crosby Health's Trade Secrets or other confidential or proprietary information derived from or relating to the Crosby Platform and developing, marketing, licensing, selling, distributing, or otherwise commercializing any software

product or service that incorporates, is derived from, or was developed using Crosby Health's Trade Secrets or other proprietary information;

B.   Compensatory damages for all actual losses and unjust enrichment resulting from Defendants' misappropriation of Crosby Health's Trade Secrets, tortious interference, unjust enrichment, and conspiracy;

C.   Exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C), reflecting the willful and malicious nature of Defendants' conduct;

D.   Punitive Damages pursuant to Mo. Rev. Stat. § 417.457, reflecting the outrageous misappropriation by Defendants and their evil motive and/or reckless indifference to Crosby Health's rights;

E.   Reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D); and

F.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  July 17, 2026

Respectfully submitted,

**LEWIS RICE LLC**

By:     /s/Michael J. Hartley
        Michael J. Hartley, #55057MO
        Miranda R. Nolan, #76718MO
        600 Washington Avenue, Suite 2500
        St. Louis, MO 63101-1311
        (314) 444-7782
        (314) 612-7782
        mhartley@lewisrice.com
        mnolan@lewisrice.com

        ***Attorneys for DictateMD, Inc. d/b/a Crosby Health***