UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DICTATEMD, INC., D/B/A CROSBY HEALTH,<br><br>Plaintiff,<br><br>v.<br><br>ALI AHMADI, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:26-cv-01129-CMS |

## MEMORANDUM AND ORDER

Before the Court is Defendant Ali Ahmadi's Motion to Dismiss for Failure to State a Claim or, in the Alternative, to Compel Arbitration and Stay Proceedings. (Doc. 27). The Motion is granted in part and denied in part. The case is referred to arbitration and stayed pending resolution of the arbitration proceedings.

## BACKGROUND

### I. Factual Background

The following allegations from Plaintiff DictateMD, Inc., d/b/a Crosby Health's Complaint (Doc. 1) are accepted as true for purposes of this Order. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025).

Plaintiff is a healthcare technology company that developed a platform "to enable healthcare organizations to administer the Centers of Medicare & Medicaid Services ('CMS') Guiding and Improved Dementia Experience ('GUIDE') Program." (Doc. 1 at 1–3). Plaintiff's platform includes proprietary information developed over the course of 18 months and required "substantial monetary investments." *Id.* ¶ 12. Plaintiff's "software[,] architecture, database schema, data structures, workflows, user interface design, and related technical components, as

well as proprietary, trade-secret-protected information . . . constitute trade secrets under applicable federal and Missouri law" (the "Trade Secrets"). *Id.* ¶ 14. "The Trade Secrets derive independent economic value from not being generally known to or readily ascertainable by others in the industry . . . ." *Id.* ¶ 16. Plaintiff invested at least $2,000,000 in the platform's development, and the platform was developed through an "iterative process [that] cannot be replicated by any shortcut . . . ." *Id.* ¶¶ 19–20.

Plaintiff takes "extensive measures to maintain and protect the secrecy of its Trade Secrets," which are "not known outside of [Plaintiff's organization], except to a small, specifically authorized set of GUIDE customers and their approved partners, all of whom are bound by written confidentiality agreements." *Id.* ¶¶ 22–23. Plaintiff requires all users to agree that these "proprietary rights are protected by trade secrets" and to "not modify, copy, distribute, transmit, display, perform or create derivative works from the content, information or material on" its platform. *Id.* ¶ 26.

Further, Plaintiff requires all customers to execute agreements "containing express confidentiality obligations, restrictions on permitted use, and prohibitions on reverse engineering, copying, decompiling, disassembling, or otherwise replicating" the platform. *Id.* ¶ 33. Specifically, all customers have signed a similar set of agreements, including a Billing Services Agreement ("BSA") and a Dementia Care Support Services Agreement ("DCSSA"), as a condition of obtaining access to the platform. *Id.* ¶ 34. The BSA and DCSSA include confidentiality clauses restricting use and disclosure of the Trade Secrets and other non-public information, including a provision that prohibits reverse engineering of the platform. *Id.* ¶¶ 36–37.

Defendant Ali Ahmadi is the former CEO of Eli Health. *Id.* ¶ 43. While acting in his capacity as CEO, Defendant Ahmadi executed both a BSA and a DCSSA. *Id.* ¶ 44. Thus,

"Defendant Ahmadi undeniably had direct, actual, and unambiguous knowledge of each of the restrictions and obligations in the BSA and DCSSA." *Id.* ¶ 46.

Plaintiff alleges that Defendant Ahmadi orchestrated "a deliberate scheme to misappropriate [Plaintiff]'s Trade Secrets . . . [to develop] a competing GUIDE program administration software product . . . ." *Id.* ¶ 48. To do so, "Defendant Ahmadi illicitly hired a software development agency, Defendant Codeworkx LLC, to assist in building the competing product . . . ." *Id.* ¶ 49.

Defendant Vijay Anand is the CEO of Defendant Codeworkx and has a previous business relationship with Defendant Ahmadi. *Id.* ¶¶ 50–51. According to the Complaint, Defendant Ahmadi provided Defendants Codeworkx and Anand access granted to him through the BSA without Plaintiff's permission. *Id.* ¶¶ 52–53, 58–59. Thereafter, "Defendant Anand, on behalf of Codeworkx, accessed multiple trade-secret-protected modules and workflows" and created "a working prototype of a competing software product." *Id.* ¶¶ 54, 56. "Defendant Ahmadi represented to other employees/contractors of Eli Health and/or related companies that he reverse engineered" the platform, that he "intended to cut out Crosby Health from its customer, Eli Health," and "that he intended to directly compete with Crosby Health." *Id.* ¶¶ 64–66. Defendants Anand and Codeworkx were not a party to, or a beneficiary of, the BSA or DCSSA. *Id.* ¶ 69.

## II. Procedural Background

On July 17, 2026, Plaintiff filed its Complaint against Defendants Ahmadi, Anand, and Codeworkx alleging five counts: Theft of Trade Secret in violation of 18 U.S.C. § 1836 (Count I), Theft of Trade Secret in violation of Missouri Revised Statutes Section 417.457 (Count II), Tortious Interference with a Contract (Count III), Unjust Enrichment (Count IV), and Civil Conspiracy to Misappropriate Plaintiff's Trade Secrets (Count V). (Doc. 1).

On August 13, 2026, Plaintiff filed its Motion for Preliminary Injunction (Doc. 18) and its Motion for Leave to File Under Seal (Doc. 20).

On August 21, 2026, Defendant Ahmadi filed the present Motion to Dismiss Party for Failure to State a Claim or, in the Alternative, to Compel Arbitration and Stay Proceedings. (Doc. 27). He argues that all Defendants can compel arbitration under the BSA and DCSSA arbitration provisions because, although not all are parties to the agreements, Plaintiff's claims are intertwined with the agreements, and Plaintiff should not be permitted to rely on the agreements in bringing its claims yet disavow the arbitration clauses. (Docs. 27 and 28).

On September 4, 2026, Plaintiff filed its Memorandum in Opposition to Defendant's Motion. (Doc. 29).

On September 21, 2026, Plaintiff filed its Motion for Entry of Clerk's Default against Defendant Codeworkx (Doc. 32) and, on September 22, 2026, the Clerk entered his Entry of Default (Doc. 34).

On September 21, 2026, Plaintiff filed a Notice of Voluntary Dismissal of Defendant Anand Without Prejudice (Doc. 33), which this Court subsequently acknowledged on September 22, 2026 (Doc. 35).

On October 13, 2026, Plaintiff filed its motion for Default Judgment as to Defendant Codeworkx (Doc. 46). This Court granted Plaintiff's Motion and entered default judgment against Defendant Codeworkx on October 14, 2026. (Doc. 48).

## LEGAL STANDARDS

A motion to compel arbitration is analyzed under the Federal Rules of Civil Procedure, either as a Rule 12(b)(6) motion to dismiss or as a Rule 56 motion for summary judgment, depending on whether the Court considers matters outside the pleadings. *City of Benkelman v.*

*Baseline Eng'g Corp.*, 867 F.3d 875, 881–82 (8th Cir. 2017). Documents "necessarily embraced by the complaint" are considered part of the pleadings. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). Plaintiff's Complaint necessarily embraces the BSA and DCSSA, and those agreements will be considered part of the pleadings for purposes of Defendant Ahmadi's Motion.

## DISCUSSION

### I. Who Decides Arbitrability

At the outset, before reviewing a motion to dismiss, the Court must determine whether it must refer the case to arbitration. *See Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1087 (8th Cir. 2021) (internal citations omitted) (courts should review jurisdiction prior to addressing the merits of a dispute). As mentioned, Plaintiff and Defendant Ahmadi, as CEO of Eli Health, are signatories to the BSA and DCSSA. Determining whether parties to a contract are bound by arbitration provisions is a threshold question of arbitrability. *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011). "[T]hreshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator." *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002)). The Eighth Circuit has held the incorporation of an arbitral institution's rules "into a contract requiring arbitration to be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability." *Id.* (citing *Green*, 653 F.3d at 769).

Here, the BSA and DCSSA contain identical arbitration provisions. (Docs. 1-1, 1-2). The provisions explicitly incorporate the "Rules of Practice and Procedures of ADR Services, Inc." *Id.* Under *Eckert*, there is a "clear and unmistakable indication the parties intended for the arbitrator

to decide threshold questions of arbitrability." *Eckert*, 756 F.3d at 1100. Hence, pursuant to the arbitration provisions, an arbitrator must decide threshold questions of arbitrability as to Plaintiff and Defendant Ahmadi, the signatories to the BSA and DCSSA.[1]

**II. Arbitrability**

Assuming Defendant Ahmadi is a non-signatory, as he argues,[2] *see* (Doc. 29 at 16–17), and assuming the arbitrability of Plaintiff's claims against Defendant Ahmadi is to be decided by this Court, the Court would decide in the affirmative. "Arbitration agreements are favored by federal law and will be enforced as long as a valid agreement exists and the dispute falls within the scope of that agreement." *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019). The Eighth Circuit has decided three cases that, together, lay a framework for determining whether a non-signatory can compel arbitration.

First, in *CD Partners, LLC v. Grizzle*, the court adopted the "alternative estoppel" theory, whereby a non-signatory can "force a signatory into arbitration" if "the relationship of the persons, wrongs, and issues involved is a close one." 424 F.3d 795, 799 (8th Cir. 2005) (internal citations omitted). In that case, the defendants, three non-signatory principals of a corporation named C.D. Warehouse, moved to compel arbitration against plaintiff C.D. Partners, L.L.C., claiming the torts C.D. Partners asserted "arose from the contractual relationship between" C.D. Warehouse and C.D. Partners. *Id.* at 798. The district court denied the motion. *Id.* The Eighth Circuit reversed, holding the tort claims "had their genesis in, arose out of, and related to" the underlying agreements. *Id.* at 801. In so holding, the court noted that the agreements were "worded broadly"

[1] Because Defendants Anand and Codeworkx are no longer parties to this case, the Court need not analyze whether the arbitration provisions extend to them. *See* (Docs. 33, 35, 46, 48).

[2] "[A]n individual who signs an agreement only in a representative capacity is not personally bound by that agreement's arbitration clause, and, by the same logic, cannot personally invoke it." (Doc. 29 at 16 (citing *Flink v. Carlson*, 856 F.2d 44, 46 (8th Cir. 1988)).

and that, because of the "strong national policy in favor of arbitration . . ., doubts about whether an arbitration clause should be construed to cover a particular dispute are generally resolved in favor of arbitration." *Id.* at 800 (internal citations omitted).

Second, in *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, the plaintiff sued a non-signatory potential licensee for tortious interference with a contract and conspiracy. 592 F.3d 830, 833 (8th Cir. 2010). The non-signatory defendant moved to compel arbitration, which the district court granted because "all of PRM's claims either make reference to or presume the existence of" the underlying agreements "and allege substantially interdependent and concerted misconduct by both the nonsignatory . . . and one or more of the signatories . . . ." *Id.* On appeal, the Eighth Circuit affirmed the district court's decision, reasoning that "the alleged collusive actions . . . arose out of and targeted the [underlying agreements and] were 'intimately founded in and intertwined with' Primenergy's underlying contract obligations." *Id.* at 836 (citing *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 735 (8th Cir. 2010)).

Finally, in *In re Wholesale Grocery Prods. Antitrust Litig.*, the Eighth Circuit reversed the district court's holding that the non-signatory could enforce arbitration agreements because the claims were not "so intertwined with the agreement containing the arbitration clause that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of that same agreement." 707 F.3d 917, 923–25 (8th Cir. 2013). The court reasoned that the plaintiff's statutory claims existed independent of the agreements at issue, the claims did not involve alleged violation of any terms of the agreements, and there was no evidence that the contracts explicitly anticipated a signatory would enter into the type of relationship with a non-signatory at issue there. *Id.* at 923–24. The court noted that the district court's analysis "focuse[d] too much on the relationship between the signatories, rather

than on the relationship between the signatory's claims against the non-signatory and the contract containing the arbitration clause." *Id.* at 924.

Based on this precedent, the Court concludes that Defendant Ahmadi, even if construed as a non-signatory, can compel arbitration of Plaintiff's claims against him.

First, similarly to *CD Partners*, Defendant Ahmadi was CEO of Eli Health and executed the BSA and DCSSA on behalf of Eli Health. (Doc. 1 ¶ 43). The dispute clearly "arises out of and relates directly to the contractual agreement" and the arbitration provisions at issue here are broad in that they refer to disputes "among the Parties," as opposed to "between the parties." (Docs. 1-1, 1-2). The former phrase is broader than the latter. *See, e.g.*, Frank H. Vizetelly, *A Desk-book of Errors in English* 30 (rev. ed. 1920) ("*Among* may apply to any number; *between* applies to two only."). Also, even assuming no contractual relationship between Plaintiff and Defendant Ahmadi existed, *PRM Energy* and *In re Wholesale Grocery* both focus their inquiry on the relationship between the claims and the contract. *See infra*.

Second, like in *PRM Energy*, the claims "make reference to or presume the existence of" the agreements because, as mentioned *supra*, Plaintiff's Complaint repeatedly references the BSA and the DCSSA in each count. *PRM Energy Sys., Inc.*, 592 F.3d at 833; *see* (Doc. 1 ¶¶ 79, 82, 100, 103, 107, 109, 116, 118, 119, 120, 121, 122, 123, 124, 125, 133, 139).

Third, contrary to Plaintiff's assertion otherwise, the claims do not exist independent of the BSA and DCSSA and do involve alleged violations of the agreements. *See In re Wholesale Grocery Prods. Antitrust Litig.*, 707 F.3d at 923–24. Count I, theft of trade secret under federal law, alleges Defendant Ahmadi "had direct knowledge that the Trade Secrets were acquired by improper means because he personally signed the BSA and DCSSA . . . ." and "Defendant Anand accessed and reviewed" the platform "despite the BSA's and DCSSA's express restrictions . . . ."

(Doc. 1 ¶¶ 79, 82). Count II, theft of trade secret under Missouri law, alleges the same. *Id.* ¶¶ 100, 103. Count III, tortious interference with contract, quite obviously could not stand without the BSA and DCSSA's existence—it alleges Defendants "improperly interfered with the BSA and DCSSA . . . ." *Id.* ¶¶ 120–21. Count IV, unjust enrichment, alleges Defendants misappropriated a benefit "in violation of the BSA and the DCSSA, without valid credentials or rights, all without compensating Plaintiff . . . ." *Id.* ¶ 133. Count V, conspiracy to misappropriate trade secrets, similarly alleges conspiracy to misappropriate Trade Secrets in violation of the BSA and DCSSA. *Id.* ¶¶ 137, 138, 139.

Thus, focusing on the "relationship between the signatory's claims against the non-signatory and the contract containing the arbitration clause," *In re Wholesale Grocery Prods. Antitrust Litig.*, 707 F.3d at 924, the Court concludes that Plaintiff's claims against Defendant Ahmadi are arbitrable. In addition to the general preference for arbitration, Plaintiff's specific claims here arise out of the BSA and DCSSA and are intimately intertwined with the underlying obligations in those agreements.

Therefore, the Court will not consider Defendant Ahmadi's Motion to Dismiss because each of Plaintiff's claims must be submitted to an arbitrator to determine arbitrability and, potentially, to arbitrate the claims. *See Green*, 653 F.3d at 769.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Ahmadi's Motion to Dismiss for Failure to State a Claim or, in the Alternative, to Compel Arbitration and Stay Proceedings (Doc. 27) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant Ahmadi's Motion to Dismiss (Doc. 27) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Defendant Ahmadi's Motion to Compel Arbitration and Stay Proceedings (Doc. 27) is **GRANTED**.

**IT IS FINALLY ORDERED** that this case shall be referred to an arbitrator and stayed pending resolution of the arbitration proceedings.

So ordered this 15th day of October 2026.



CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE